IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY LEE WEBB, #137 198,       )<br>    Plaintiff,                                )<br>                                                    )<br>    v.                                           )<br>                                                    )<br>T. SIDDIQ, MD, DOCTOR,            )<br>                                                    )<br>    Defendant.                             ) | CIVIL ACTION NO.:  2:15-CV-558-MHT<br>                    [WO] |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Jimmy Webb ["Webb"], a state inmate incarcerated at the Bullock Correctional Facility in Union Springs, Alabama, brings this 42 U.S.C. § 1983 action against Dr. Tahir Siddiq. Webb alleges Dr. Siddiq violated his Eighth Amendment rights by failing to provide him with adequate medical care for a serious medical need—hepatitis C.  Webb sues Dr. Siddiq in his official and individual capacities seeking damages, injunctive relief, and attorney's fees. Doc. 1.

Dr. Siddiq filed a special report and supplemental special report. Docs. 11, 22. The court entered an order which provided Webb an opportunity to file a response to Dr. Siddiq's special report, as supplemented.  Docs. 12, 23.  This order advised Webb his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 12 at 3. This order further cautioned Webb that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special report[s] and any supporting evidentiary materials as  a [dispositive] motion . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." Doc. 12 at 3–4.  Webb responded to Dr. Siddiq's reports, *see* Docs. 14, 24,

25, but his responses do not demonstrate there is any genuine dispute of material fact. See Doc. 12 at 3.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendant has met his evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593–594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact)

(internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Webb's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A. Eighth Amendment Claim Against Defendant in His Official Capacity

Webb brings suit against Dr. Siddiq in his official and individual capacity. Doc. 1 at 7. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (*citing Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (discussing abrogation by Congress); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (discussing Eleventh Amendment immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived Eleventh Amendment immunity)).

In light of the foregoing, Dr. Siddiq is a state actor entitled to sovereign immunity under the Eleventh Amendment for Webb's Eighth Amendment claims seeking monetary damages from him in his official capacity. The claims for money damages brought against Dr. Siddiq in his official capacity is, therefore, due to be dismissed.

**B. Eighth Amendment Claim Against Defendant in His Individual Capacity[1]**

Webb signed up for sick call in May of 2015 seeking treatment for "Hep-C." Dr. Siddiq discussed Webb's request for treatment during which time Webb informed the physician that a drug called Sovaldi had been discovered as a cure for hepatitis C. Dr. Siddiq informed Webb there is no cure for hepatitis C, and he would not treat Webb at all. Webb alleges Dr. Siddiq's conduct amounted to deliberate indifference to his serious medical needs because the physician refused to treat him per his request "and prior to signing a 'consent form' to treatment for 'Hep-C.' " Webb contends Dr. Siddiq knew of his serious medical needs based on his medical records which indicated he had been diagnosed with hepatitis C and yet refused to provide treatment. Doc. 1.

Dr. Siddiq is the Medical Director at Bullock, a position he has held since 2003. Dr. Siddiq is familiar with Webb having examined him and treated him at Bullock regarding his medical needs and concerns. The evidentiary materials filed by Dr. Siddiq address the allegations made by Webb. A thorough review of these documents and records demonstrate the affidavits submitted by Dr. Siddiq describing the treatment provided to Webb are corroborated by the objective medical records compiled contemporaneously with such treatment. Docs. 11-1, 11-3, 22-1.

---

[1] Defendant Siddiq does not argue the defense of qualified immunity in his special reports, he only raises the defense in his answer. Doc No. 10 at 3. Because the court concludes that Webb has not demonstrated a violation of his constitutional rights, "there is no necessity for further inquiries concerning qualified immunity." *Harrison v. Culliver,* 746 F.3d 1288, 1300 n.15 (11th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Losey v. Thompson*, 596 Fed. App'x. 783, 790 n.3 (11th Cir. 2015) ("Because ... [plaintiff's] Eighth Amendment claim of deliberate indifference fails, [defendant] has no need of qualified immunity, so we do not separately address it.").

At the outset, Dr. Siddiq explains that his role in the treatment decisions regarding infectious disease inmate-patients is limited. The primary treatment decisions for infectious disease inmate-patients are made by a board-certified infectious disease specialist employed solely for this purpose by the Alabama Department of Corrections ["ADOC"]. Dr. Siddiq's role related to treatment of infectious disease inmate-patients includes a very basic evaluation and, upon receiving consent for treatment by the inmate-patient, Dr. Siddiq refers the inmate-patient for a more thorough evaluation by the infectious disease specialist. After a referral has been made Dr. Siddiq's treatment decisions remain limited as he relies on the directives and recommendations of the infectious disease specialist regarding the inmate-patient's treatment. Doc. 11-1.

In 2009 Webb, while incarcerated at the Ventress Correctional Facility, received a diagnosis of hepatitis C through lab testing in response to his complaints of discolored urine and stools. Webb was transferred to Bullock in November of 2009. His medical records reflect he discussed with medical staff treatment for his hepatitis C in October 2010 which led to his confirming, in writing, his decision to decline hepatitis treatment. Webb's medical records reflect he continued to withhold his consent to treatment for several years. Doc. 11-3 at 6–8, 14–16.

During his incarceration at Bullock Webb has been enrolled in the chronic care clinic for liver disease where he has received routine lab work and quarterly evaluations to monitor the status and progression of his liver disease. Dr. Siddiq states Webb's medical records do not reflect he is suffering from end-stage liver disease. Rather, the physician indicates Webb's condition reflects a fairly typical progression of hepatitis C—a very slow-progressing disease—with no significant complications. Dr. Siddiq affirms most patients with hepatitis C will die of other causes even if untreated for hepatitis C. Docs. 11-1, 11-3.

On May 21, 2015, Webb submitted a sick call request advising he received a hepatitis C diagnosis in 2008 or 2009 and complaining his liver was causing him severe pain. Webb's sick call request referenced Sovaldi as a cure for hepatitis C. The day before Webb submitted the May 21 sick call request, Dr. Siddiq had examined Webb and they discussed the currently available treatments for hepatitis C. Dr. Siddiq intended to refer Webb for treatment and further evaluation by the infectious disease specialist, but Webb refused to sign the written consent form required to initiate the process. Doc. 11-1, Doc. 11-3 at 8, 10, 47–49, 51 .

After engaging in further discussions, Webb signed a consent for treatment of his hepatitis C on June 9, 2015. Doc. 11-3 at 53–54. Medical staff initiated orders for lab tests and drug screening. *Id.* at 11, 52–55. Notwithstanding initiation of treatment, Dr. Siddiq affirms there is no significant urgency associated with Webb's condition as his labs results reflect no rapidity in the disease's progression nor any indication he is approaching the threshold of end-stage liver disease. Although Webb complained of liver pain, Dr. Siddiq states such pain is scientifically untenable as the nervous system does not penetrate or infiltrate the liver as it does other organs. While Webb has not complained to Dr. Siddiq about abdominal pain, if that is the source of Webb's pain, Dr. Siddiq states that would be attributable to something other than hepatitis C for which Webb could submit a sick call slip requesting evaluation. Finally, Dr. Siddiq states Webb's evaluation for hepatitis C treatment is conducted pursuant to current treatment protocols with additional decisions regarding treatment directed primarily to the infectious disease specialist.[2] Doc. 11-1.

---

[2] In a supplemental special report, Dr. Siddiq acknowledged that he had incorrectly stated in his affidavit submitted in support of his special report that Webb was currently receiving medication for hepatitis C. Doc. 11-1 at 5. Dr. Siddiq corrected that statement by affirming that he "can confidently state that, *if approved,* Mr. Webb *will* receive medications which are far less toxic and more effective in treating his condition than the medications previously utilized in the treatment of hepatitis C." Doc. 22-1 at 2 (emphasis in original). According to Dr. Siddiq's answers to Webb's discovery requests (*see* Docs. 18, 21), as of January 11, 2016, Webb was not receiving hepatitis C-specific medications but was undergoing evaluation for his qualifications for receiving those medications. Dr. Siddiq's understanding at that time

To prevail on a claim about an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). However, medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); quoting *Rogers v. Evans*, F.2d 1052, 1058 (11th Cir. 1986). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (finding, as directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

Within the Eleventh Circuit, medical malpractice and negligence do not equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct.

---

was that the infectious disease specialist had approved Webb for treatment and Webb would likely begin receiving the approved medications within a few months. Doc. 28-1 at 4.

> 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

To demonstrate a claim of "deliberate indifference to [a] serious medical need . . ., [Webb] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). Thus, in order to obtain relief based on a claim of deliberate indifference, an inmate must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (finding that for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, a plaintiff must first show "an objectively serious medical need[ ] . . . and second, that the response made by [the defendants] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnos[is] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal quotations and citations omitted). To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis,

8

accidents, [or] poor exercise of medical judgment.  An allegation of negligence is insufficient to state a due process claim." *Daniels*, 474 U.S. at 330-33.

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things: 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.   When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey*, 646 Fed. App'x at 780. "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and quotations omitted). Additionally, the law is well settled that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774

F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact inmate desires a different mode of diagnosis does not amount to deliberate indifference violative of the Constitution).

Webb argues Dr. Siddiq knew he had hepatitis C when he arrived at Bullock yet has intentionally refused to treat him for the disease. Dr. Siddiq, Webb claims, has perjured himself by stating Webb refused treatment as Webb maintains he did not refuse treatment at any time. Rather, Webb maintains Dr. Siddiq and other medical personnel falsify medical records to "try and cover their tracks" when allegations of violating an inmate's rights are leveled against them. *See* Docs. 14, 24, 25. Webb does not, however, identify any medical records he maintains are false or inaccurate.

Although Webb maintains Dr. Siddiq failed to provide proper and adequate medical care and treatment for his hepatitis C, he presents no medical evidence establishing the physician-defendant disregarded a substantial risk to his health. Webb's own evidentiary materials and his medical records reflect that on numerous occasions he refused to give his consent for treatment of his hepatitis C. Docs. 2-2, 2-3, Doc. 11-3 at 14–16. Webb finally signed a consent form for treatment of his condition on June 9, 2015. Doc. 11-3 at 53–54. Webb's contention that Dr. Siddiq "demonstrated deliberate indifference to [Webb's] serious medical needs by refusing to treat him upon request and prior to signing a 'consent form' to treatment for 'Hep-C'" is untenable. *See* Doc. 1. While Webb is correct that Dr. Siddiq would not initiate the treatment process for hepatitis C without Webb's consent, that in no way supports Webb's argument that the physician acted with deliberate indifference to his serious medical needs. Hepatitis C treatment has both risks and potential benefits. Doc. 11-3 at 53–54. A patient's compliance with an established regimen is an essential part of hepatitis C treatment necessitating a patient's knowing consent to treatment. *Id.* The undisputed evidentiary material shows that any delay in beginning treatment for hepatitis C is

attributable to Webb's decision to withhold his consent for such treatment. As soon as Webb signed the consent form for hepatitis C treatment, Dr. Siddiq initiated orders for all necessary testing. Beyond initiating the process for Webb to undergo necessary testing, further decisions regarding Webb's hepatitis C treatment regimen are the province of the infectious disease specialist. Doc. 11-1.

Despite his assertions, Webb provides no evidence that the medical care and treatment rendered regarding the condition about which he complains, and specifically from Dr. Siddiq, was inadequate, detrimental to his health and well-being, or reflective of any disregard by this doctor of a substantial risk of harm to his health and well-being. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (settled law holds that "[s]ociety does not expect that prisoners will have unqualified access to health care."). Even though Webb refused to consent to hepatitis C treatment, Dr. Siddiq's evidence reflects that he with other prison medical personnel routinely monitored Webb's liver condition using a standardized set of protocols for hepatitis C patients. The protocols include enrollment in the institution's chronic care clinic, routine sets of lab work drawn quarterly, diagnostic studies, and more invasive procedures as required. Webb's medical records show medical personnel evaluated, monitored, and treated him for his liver disease in accordance with their assessment of his condition. There is no indication in Webb's medical records he was denied any necessary treatment or that he suffered any injury or damage due to a denial or a deficiency in the provision of his medical care. Docs. 11-1, 11-3.

Webb has come forward with no significantly probative evidence which demonstrates that Dr. Siddiq disregarded a substantial risk to his health. *See generally Estelle*, 429 U.S. at 104-05 (mere negligence in providing medical care is insufficient to violate the Constitution). To the extent Webb's claim is based upon his own disagreement with Dr. Siddiq or other prison medical

11

staff about the course of his medical treatment, such claim does not amount to deliberate indifference. *Id.* 429 U.S. at 107; *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). As explained, whether correctional medical personnel "should have employed additional . . . forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted); *Garvin*, 236 F.3d at 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). Webb presents no evidence which indicates Dr. Siddiq knew how he treated Webb's condition created a substantial risk to his health and that with that knowledge, consciously disregarded such risk.

Finally, a delay of treatment for an obviously serious medical condition can constitute deliberate indifference when "it is apparent that delay would detrimentally exacerbate the medical problem," it does so, and "the delay is medically unjustified." *Taylor*, 221 F.3d at 1259-60 (quotation omitted). However, any claim that specific medical procedures were impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). Here, the court finds that no verifying evidence has been produced establishing any detrimental effect because of Dr. Siddiq's actions or that Dr. Siddiq disregarded a substantial risk to Webb's health by delaying medical services or medical care for him. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). As Dr. Siddiq explains, he could not force Webb to unwillingly accept any form of medical treatment nor would the physician even

attempt to do so and, consequently, the evaluations and referrals for hepatitis C treatment did not go forward prior to Webb giving his consent to such treatment. Doc. 22-1 at 3.

Webb's conclusory allegations of falsified medical records and his unsupported factual allegations regarding the provision of his medical care and treatment for hepatitis C are legally insufficient to defeat Dr. Siddiq's properly supported summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). Webb provides nothing more than his unsubstantiated opinions about the quality of the medical care he received. His opinions are insufficient to create a genuine dispute of material fact, and his failure to support his claims with medical or scientific evidence is fatal to them. No evidence exists showing Dr. Siddiq demonstrated deliberate indifference towards Webb's medical needs by delaying or withholding necessary medical treatment, or by interfering with his ability to access any such necessary treatment. Summary judgment is, therefore, due to be granted in Defendant Siddiq's favor.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's motion for summary judgment (Docs. 11, 22) be GRANTED.

2. Judgment be GRANTED in favor of Defendant and against Plaintiff.

3. This case be dismissed with prejudice.

4. Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before June 11, 2018**, the parties may file an objection to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections

will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 24th day of May 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE